IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHAN-LI PRAYITNO on behalf of plaintiff and the class members defined below, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NEXTEP FUNDING LLC, | ) ) |
| Defendant. | ) |

**COMPLAINT – CLASS ACTION**

1. Plaintiff Chan-Li Prayitno brings this action to secure redress for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and Regulation Z, 12 C.F.R. part 1026, and state law.

2. TILA requires disclosures of credit terms in consumer credit transactions. TILA was originally enacted in 1967 "to effectively adopt a new national loan vocabulary that means the same in every contract in every state." *Mason v. General Finance Corporation of Virginia,* 542 F.2d 1226, 1233 (4th Cir. 1976). "The legislative history [of TILA] makes crystal clear that lack of uniformity in the disclosure of the cost of credit was one of the major evils to be remedied by the Act." 542 F.2d at 1231. Congress believed that uniform disclosure of credit terms would facilitate competition and drive down the cost of consumer credit.

3. Illinois prohibits consumer loans at more than 9% interest unless the lender has a license from the Illinois Department of Financial and Professional Regulation or a bank or credit union charter, all of which subject the holder to regular examinations. Consumer loans by

1

unlicensed persons under $40,000 are void as to both principal and interest. In addition, Illinois provides statutory damages of twice the finance charge contracted for or paid.

4. The Illinois Consumer Fraud Act, 815 ILCS 505/2, is patterned after the Federal Trade Commission Act and prohibits unfair and deceptive acts and practices in trade and commerce.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 15 U.S.C. 1640 (TILA) and 28 U.S.C. 1331 (general federal question), 1337 (interstate commerce) and 1367 (supplemental jurisdiction).

6. Venue in this district is proper because all events in question arose here.

## PARTIES

7. Plaintiff is an individual who resides in Romeoville, Illinois.

8. Defendant Nextep Funding LLC ("Nextep") is a limited liability company chartered under Nevada law with headquarters in Nevada. Its registered agent and office is Nevantage Law Group, 401 Ryland Street, Suite 301, Reno, NV 89502.

9. Nextep states on its web site (https://nextepfunding.com/Home/Retailers) that "Nextep Funding is a customer lease-to-own financing program that allows you to offer your customers the choice of spreading out their purchase cost over time. Nextep instantly approves your customers 24/7 online, so you can begin increasing your sales immediately - by an average of 31%. Nextep approves your customers with no credit or bad credit when other companies cannot, helping more of your customers leave with their purchases every day. Why miss out on a sale simply because a customer does not have enough money in their pocket? Signing up takes minutes and you can begin offering the program instantly!"

**FACTS**

10. On or about February 21, 2017, plaintiff visited Atomic Transmission for auto repairs. The charge for the repairs was $2105.

11. The vehicle repaired was used by plaintiff primarily for personal, family or household purposes (general transportation) and not primarily for business purposes.

12. Plaintiff did not have the money at once. Atomic Transmission agreed to arrange an extension of credit to pay for the repairs.

13. Plaintiff was presented with and signed the document in Appendix A, entitled "Merchandise/ Service/ Repair Contract   Closed End Consumer Product Lease."

14. The transaction was not a "lease," in that a "lease" is a "contract in the form of a bailment or lease for the use of personal property . . . ." (12 C.F.R. §1013.2(e)(1))  or "a transfer of the right to possession and use of goods for a term in return for consideration . . . ." (810 ILCS 5/2A-103(j)).

15. Services, such as auto repairs, can be sold on credit, but not leased.

16. A purported "lease" of services is nonsensical, and the use of such a contract by a company that finances a consumer transaction represents a loan that is contrived to evade the disclosure requirements of TILA, the rate limitations of state usury law, and the licensing requirements imposed by state law on persons conducting high-interest loan businesses (Illinois Consumer Instalment Loan Act) or purchasing consumer finance paper from retailers (Illinois Sales Finance Agency Act).

17. Appendix A provides for payment of $340 upon lease signing, followed by 17 monthly payments of $245.58 each, followed by a final payment of $201.06, for a total of

$4,715.93.

18. Since the agreed price was $2105, $2610.93 of the payments represent the cost of credit.

19. The annual percentage rate exceeds 140%. (Appendix B) The calculation does not include the final $201.06, which would increase the rate further.

20. The rate charged plaintiff is typical for defendant's transactions.

21. Nextep Funding did not have a lending license from the Illinois Department of Financial and Professional Regulation to make consumer loans at more than 9% interest. Nextep Funding also does not have a bank or credit union charter, which would authorize it to make consumer loans at more than 9% interest.

22. Illinois permits an unlicensed lender to charge a consumer 9% interest. 815 ILCS 205/4.

23. Nextep Funding regularly enters into transactions of the type at issue here. The document in Appendix A is a printed form. It is labeled "merchandise/service/ repair contract" and "closed end consumer product lease," indicating that services and repairs are regularly financed as closed end consumer leases.

24. Nextep Funding states on its web site (https://nextepfunding.com/#calculator-a): "Nextep Funding, LLC offers a retailer to customer lease-to-own financing platform designed to increase retailer sales by offering customers the ability to finance goods *and services* on the spot, in the store and without delay. We take pride in our dynamic product by providing superior customer service and retailer training in anticipation of increased sales for our retail partners and appreciative customers who get to leave their store with what they came for. . . . ." (Emphasis

added)

25. Nextep Funding has a Facebook page on which it promotes the financing of auto repairs: "If you do end up needing your transmission or engine repaired to enjoy this beautiful weather, don't forget that Nextep Funding is there for your transmission and *auto repair* whenever you need us!" (https://www.facebook.com/NextepFunding/, emphasis added)

26. Nextep Funding has a Linkedin page on which it states: "Not only do we finance powersport vehicles, but we finance *repairs* and merchandise as well, so your customer can get everything they need all in one place!" (https://www.linkedin.com/company-beta/10068840/, emphasis added)

27. Nextep Funding's Linkedin page also recognizes that it is effectively making loans to consumers: "Nextep Funding's dedicated team believes that all customers deserve to have an efficient, easy to use, lending service. This service is tailored to meet the individual needs of many and empower customers through the creation of inventive underwriting processes and a passion to improve the world of consumer lending."

28. The use of its standard form "lease" document to finance the purchase of services is thus a standard practice of Nextep Funding.

29. Nextep Funding targets unsophisticated consumers with poor credit, "with subprime consumers comprising most of its portfolio", according to an interview with its executives. (http://powersportsfinance.com/smaller-powersports-lease-market-growing-like-wildfire/)

30. Defendant collected money from plaintiff on account of the transaction.

5

## COUNT I – TILA

31. Plaintiff incorporates paragraphs 1-30.

32. By documenting a loan as a "lease," defendant failed to provide any of the TILA disclosures required for a loan in 15 U.S.C. §1638 and 12 C.F.R. §1026.18, including the amount financed, the finance charge, the annual percentage rate, and the payment schedule.

## CLASS ALLEGATIONS

33. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

34. The class consists of (a) all persons in Illinois, Wisconsin or Indiana (b) who signed a document similar to that in Appendix A (c) financing the acquisition of services (d) on or after a date one year prior to the filing of this action, and on or before a date 21 days after the filing of this action.

35. On information and belief, based on standard documents and practices, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

36. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

   a. Whether defendant engages in a practice of making "leases" of services;

   b. Whether such transactions are disguised loans;

   c. Whether such transactions evade the disclosure requirements applicable to loans under TILA.

      d.      Whether the effective interest rate charged by defendant exceeds 9%.

      e.      Whether such transactions violate Illinois usury law.

      f.      Whether such transactions are unfair and deceptive.

37.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

38.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

39.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights;

      c.      Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

      i.      Statutory damages not exceeding $1 million or 1% of defendant's net worth, whichever is less.

      ii.      Attorney's fees, litigation expenses and costs of suit;

      iii.      Such other and further relief as the Court deems proper.

**COUNT II – USURY/ CONSUMER INSTALLMENT LOAN ACT**

40.    Plaintiff incorporates paragraphs 1-30.

41.    By documenting a loan as a "lease," defendant charged via subterfuge interest in

excess of the 9% it was authorized to charge under 815 ILCS 205/4.

42. Defendant is therefore liable for statutory damages under 815 ILCS 205/6.

43. In addition, under the Consumer Instalment Loan Act, which governs the making of consumer loans under $40,000, a loan by an unlicensed lender "shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan." 205 ILCS 670/20(d).

## CLASS ALLEGATIONS

44. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

45. The class consists of (a) all persons in Illinois (b) who signed a document similar to that in Appendix A (c) financing the acquisition of services (d) where the annual percentage rate, based on the price of the services and the payments required, exceeds 9% (believed to be the case in all transactions) (e) where the transaction was outstanding on or after a date 2 years prior to the filing of this action.

46. On information and belief, based on standard documents and practices, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

47. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether defendant engages in a practice of making "leases" of services;

    b. Whether such transactions are disguised loans;

        c.        Whether such transactions evade the disclosure requirements applicable to loans under TILA.

        d.        Whether the effective interest rate charged by defendant exceeds 9%.

        e.        Whether such transactions violate Illinois usury law.

        f.        Whether such transactions are unfair and deceptive.

48.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

49.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

50.    A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.        Individual actions are not economically feasible.

        b.        Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

        i.        Statutory damages under 815 ILCS 205/6 (twice the finance charge contracted for or paid, whichever is larger);

        ii.        A declaration that the transactions are void and cannot be enforced against the consumers;

        iii.        Attorney's fees, litigation expenses and costs of suit;

        iv.        Such other and further relief as the Court deems proper.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

51. Plaintiff incorporates paragraphs 1-30.

52. By engaging in the conduct described above, defendant engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2.

53. Defendant engaged in deceptive conduct when it omitted material information required by law to be disclosed, when it failed to provide any of the TILA disclosures required for a loan in 15 U.S.C. §1638 and 12 C.F.R. §1026.18, including the amount financed, the finance charge, the annual percentage rate, and the payment schedule.

54. Defendant engaged in unfair and oppressive conduct contrary to public policy when it charged interest in excess of both the Illinois civil usury limit, 815 ILCS 205/4, and the Illinois criminal usury statute, 720 ILCS 5/17-59.

55. Defendant engaged in unfair and oppressive conduct contrary to public policy when it engaged in a business for which a license is required – making high interest loans to consumers – without having a license.

56. Defendant engaged in unfair and oppressive conduct contrary to public policy when it inflicted injury on consumers by charging usurious interest.

57. Defendant engaged in deceptive conduct when it disguised the nature of the transaction so as to confuse consumers.

## CLASS ALLEGATIONS

58. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

59. The class consists of (a) all persons in Illinois (b) who signed a document similar

to that in Appendix A (c) financing the acquisition of services (d) on or after a date 3 years prior to the filing of this action.

60. On information and belief, based on standard documents and practices, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

61. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether defendant engages in a practice of making "leases" of services;

    b. Whether such transactions are disguised loans;

    c. Whether such transactions evade the disclosure requirements applicable to loans under TILA.

    d. Whether the effective interest rate charged by defendant exceeds 9%.

    e. Whether such transactions violate Illinois usury law.

    f. Whether such transactions are unfair and deceptive.

62. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

63. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

64. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

      i.      Compensatory damages;

      ii.      Punitive damages;

      iii.      Attorney's fees, litigation expenses and costs of suit;

      iv.      Such other and further relief as the Court deems proper.

      s/Daniel A. Edelman
      Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                        s/Daniel A. Edelman
                                        Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\33926\Pleading\Complaint DAE_Pleading.WPD