**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Chan-Li Prayitno on behalf of plaintiff and the class members defined below, | ) ) ) | |
| Plaintiff, | ) ) | Case No.:  17-cv-4310 |
| v. | ) ) | Honorable Jorge L. Alonso |
| | ) | Magistrate Judge M. David Weisman |
| Nextep Funding LLC, | ) ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT</u>**[1]

---

[1] Defendant previously filed this memorandum on July 27, 2018, as an exhibit to its Unopposed Motion for Leave to File Memorandum in Support of its Motion to Dismiss in Excess of Fifteen Pages. (Dkt. 87, 87-1.) The Court granted that motion on August 14, 2018, (Dkt. 93), so Defendant now files this memorandum, which remains unchanged from the version filed on July 27, 2018, other than this note and the date in the signature block.

## TABLE OF CONTENTS

I.    BASIS FOR DISMISSAL OF THE PREVIOUS COMPLAINT ................................. 1

II.   NEW ALLEGATIONS OF THE TAC............................................................................ 2

III.  STANDARD OF REVIEW ........................................................................................... 3

IV.   ARGUMENT ................................................................................................................ 4

      A.      Count I Should be Dismissed For Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing ....................................................... 4

            1.    Prayitno could not have obtained a used transmission for cash.................. 4

            2.    Prayitno's allegation that he would have sought a small loan is also not plausibly pled. ........................................................................................ 6

            3.    Prayitno's refusal to state which course he would have taken defeats plausibility................................................................................................. 7

            4.    Prayitno's alleged unwillingness to accept more than "40-50% interest" does not show concrete harm. ................................................ 7

            5.    Prayitno's payoff inquiry does not establish concrete harm under *Spokeo*. 8

            6.    None of Prayitno's additional allegations establish standing. ................... 9

      B.      Because Count I Should Be Dismissed, the Court Should Decline Supplemental Jurisdiction Over Counts II and III ........................................ 11

      C.      Count II Should Alternatively Be Dismissed on the Merits........................... 12

      D.      Count III Should Alternatively Be Dismissed on the Merits ......................... 13

            1.    Prayitno fails to allege the proximate causation element of the ICFA. .... 13

            2.    Prayitno's allegations of unfair conduct are deficient for the additional reason that they fail to allege the *Sperry* factors....................................... 14

               a.    Public Policy .................................................................................. 15

               b.    Immoral, Unethical, Oppressive, or Unscrupulous Conduct ........ 16

               c.    Substantial Injury to Consumers .................................................. 16

V.    CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Arreola v. Godinez,*
546 F.3d 788 (7th Cir. 2008) ................................................................11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................4, 5

*Batson v. Live Nation Entm't, Inc.,*
746 F.3d 827 (7th Cir. 2014) .......................................................15, 16, 17

*Boyd v. U.S. Bank, N.A.,*
787 F. Supp. 2d 747 (N.D. Ill. 2011) ......................................................15

*Budnick Converting, Inc. v. Nebula Glass Int'l, Inc.,*
No. 09-cv-646-DRH, 2012 U.S. Dist. LEXIS 77430, 2012 WL 2017972 (S.D.
Ill. June 5, 2012) ............................................................................12

*Clark v. Bumbo Int'l Tr.,*
No. 15 C 2725, 2017 U.S. Dist. LEXIS 137607, 2017 WL 3704825 (N.D. Ill.
Aug. 28, 2017) ...........................................................................13, 14

*Cottle v. Monitech, Inc.,*
No. 7:17-CV-137-BO, 2017 U.S. Dist. LEXIS 209069, 2017 WL 6519024
(E.D.N.C. Dec. 19, 2017).....................................................................10

*Davidson v. PNC Bank, N.A.,*
No. 1:16-cv-569-WTL-MPB, 2016 U.S. Dist. LEXIS 170523, 2016 WL
7179371 (S.D. Ind. Dec. 9, 2016) ...................................................9, 10, 11

*Dennis v. Old Republic Ins. Co.,*
218 Ill. App. 3d 637, 578 N.E.2d 1010 (1991) ...........................................12

*FTC v. Sperry & Hutchinson Co.,*
405 U.S. 233, 92 S. Ct. 898 (1972)....................................................15, 17

*Gecht v. Suson,*
3 Ill. App. 3d 183, 278 N.E.2d 193 (1971) ...............................................16

*Geschke v. Air Force Ass'n,*
425 F.3d 337 (7th Cir. 2005) ...............................................................13

*Ibarrola v. Kind, L.L.C.,*
No. 13 C 50377, 2014 U.S. Dist. LEXIS 95833, 2014 WL 3509790 (N.D. Ill.
July 14, 2014)................................................................................13

*Jamison v. Bank of Am., N.A.*,
  No. 2:16-cv-00422-KJM-AC, 2017 U.S. Dist. LEXIS 125512, 2017 WL
  3394120 (E.D. Cal. Aug. 8, 2017) ...................................................................9, 11

*Laughlin v. Evanston Hosp.*,
  133 Ill. 2d 374, 550 N.E.2d 986 (1990) ................................................................16

*McCollough v. Smarte Carte, Inc.*,
  No. 16 C 03777, 2016 U.S. Dist. LEXIS 100404, 2016 WL 4077108 (N.D. Ill.
  Aug. 1, 2016) ........................................................................................................3, 4

*Oliveira v. Amoco Oil Co.*,
  201 Ill. 2d 134, 776 N.E.2d 151, 267 Ill. Dec. 14 (Ill. 2002) ................................14

*Oshana v. Coca Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ..................................................................................14

*Paige v. Waukesha Health Sys.*,
  No. 12-C-0601, 2013 U.S. Dist. LEXIS 96962, 2013 WL 3560944 (E.D. Wis.
  July 11, 2013) ...........................................................................................................3

*Pemental v. Bank of N.Y. Mellon*,
  No. 16-483S, 2017 U.S. Dist. LEXIS 122971 (D.R.I. May 10, 2017) ......................3

*Robinson v. Toyota Motor Credit Corp.*,
  201 Ill. 2d 403, 775 N.E.2d 951 (2002) .................................................................15

*Rodriguez v. Chase Home Fin., L.L.C.*,
  No. 10 C 05876, 2011 U.S. Dist. LEXIS 123166, 2011 WL 5076346 (N.D. Ill.
  Oct. 25, 2011) .........................................................................................................13

*Schwartz v. HSBC Bank USA, N.A.*,
  No. 14 Civ. 9525 (KPF), 2017 U.S. Dist. LEXIS 3410, 2017 WL 95118
  (S.D.N.Y. Jan. 9, 2017) ...................................................................................6, 7, 11

*Schwartz v. HSBC Bank USA, N.A.*,
  No. 14 Civ. 9525 (KPF), 2017 U.S. Dist. LEXIS 94019, 2017 WL 2634180
  (S.D.N.Y. June 19, 2017) ...........................................................................................7

*Shannon v. Boise Cascade Corp.*,
  208 Ill. 2d 517, 805 N.E.2d 213 (2004) .................................................................14

*Siegel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010) .............................................................................16, 17

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ................................................................................3, 7

iii

*Smith v. Ill. Sch. Dist. U-46*,
    120 F. Supp. 3d 757 (N.D. Ill. 2015) ....................................................................11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .......................................................................... *passim*

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .............................................................................8

*Tibor Mach. Prods. v. Freudenberg-Nok Gen. Pshp.*,
    967 F. Supp. 1006 (N.D. Ill. Mar. 24, 1997) .......................................................8

*Vera v. Mondelez Glob. LLC*,
    No. 16 C 8192, 2017 U.S. Dist. LEXIS 38328, 2017 WL 1036509 (N.D. Ill.
    Mar. 17, 2017).....................................................................................................3

## Statutes

Illinois Consumer Fraud Act, 815 ILCS §505/1 *et seq.*....................................................1, 15

Illinois Consumer Installment Loan Act, 205 ILCS § 670/1, *et seq.*........................................1, 13

Illinois Interest Act, 815 ILCS § 205/1 *et seq.* ......................................................................1

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* .............................................. *passim*

720 ILCS 5/17-59 ..............................................................................................................16

28 U.S.C. § 1367(c)(3)........................................................................................................11

## Other Authorities

12 C.F.R. § 226.22(a)(1)......................................................................................................9

12 CFR §226.18(s) ..............................................................................................................8

12 CFR §226.22 and Appendix J to Part 226 ......................................................................8

Fed. R. Civ. P. 12(b)(1).....................................................................................................1, 3

Fed. R. Civ. P. 12(b)(6).......................................................................................................1

The Third Amended Complaint (Dkt. 79; the "TAC") filed by Plaintiff Chan-Li Prayitno ("Prayitno") against Defendant Nextep Funding LLC ("Nextep") fails to cure the problems identified in the Court's Order dismissing the Amended Complaint (Dkt. 77; the "Order").

As before, Prayitno alleges that Atomic Transmissions repaired his car, and that Nextep financed the repairs (the "Transaction"). All three counts of the TAC arise from Prayitno's allegation that the Transaction, while documented as a consumer lease, was in fact a loan. Count I claims that Nextep failed to give disclosures required by the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (the "TILA") when certain loans are made. Count II claims that the payments required by the lease were usurious under the Illinois Interest Act, 815 ILCS § 205/1 *et seq.* (the "Interest Act") and the Illinois Consumer Installment Loan Act, 205 ILCS § 670/1, *et seq.* (the "CILA"). Count III alleges that styling the Transaction as a lease was deceptive and unfair under the Illinois Consumer Fraud Act, 815 ILCS §505/1 *et seq.* (the "ICFA").

Count I should again be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") because Prayitno lacks standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo*"). Because Count I presents the only federal question, the Court should again decline supplemental jurisdiction over Counts II and III.

Counts II and III should also be dismissed under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). Count II must be dismissed because even if the Transaction was not a lease, it was the financing of a sale of goods or services rather than a loan of money, and therefore the Interest Act and the CILA would not apply. Count III fails to plead proximate causation, and also certain requirements for when unfair (as opposed to deceptive) practices are claimed.

The dismissal should be without further leave to amend.

I.    **BASIS FOR DISMISSAL OF THE PREVIOUS COMPLAINT**

In granting Nextep's motion to dismiss, the Court found that:

[I]n this case, plaintiff has not alleged how the alleged failure to provide the information (like APR) changed his behavior. Plaintiff has not alleged he would have evaluated the loan[2] differently, made a different choice, or behaved differently in any way, had the APR been disclosed. Plaintiff does not allege that he misunderstood the cost of the credit Nextep offered him in a way that caused him to borrow from defendant rather than another lender. (Plaintiff has alleged the Agreement specifically stated how much plaintiff would have to pay and in what intervals over the life of the loan.) Plaintiff does not allege that he miscalculated APR, such that a disclosure would have changed his behavior. Plaintiff has not alleged that he shopped around for credit and found it difficult to compare Nextep's terms to credit terms offered by other lenders. In sum, Plaintiff has not alleged how the APR nondisclosure changed his behavior, such that it caused him concrete harm.

Dkt. 77 at 4 (internal citation omitted).

## II.    NEW ALLEGATIONS OF THE TAC[3]

In attempting to cure these deficiencies, Prayitno now alleges that "[a]ccording to the owner and records of Atomic Transmissions, plaintiff was initially offered a used transmission at about $995 or $995 plus minor additional items. The total would have been substantially less than $2,105," Dkt. 79, ¶ 13, and that "[h]ad plaintiff understood that he would have to pay over 140%, he would have done one or more of the following: a. Purchased the used transmission job, at the lesser price, and paid cash, thereby avoiding the oppressive rate offered by defendant; b. Sought out a small loan from a loan company[.]" *Id.*, ¶ 28. He alleges that he "was unwilling to pay more than 40-50%." *Id.*, ¶ 29. He also alleges that he was unable to verify whether certain post-Transaction statements from Nextep about the payoff amount were accurate, *id.*, ¶ 30-32, and makes additional allegations about Nextep's purported failures resulting in his entering an "unduly burdensome" transaction, *id.* ¶¶ 27, 29, 33-35, 38.

---

[2] The Court assumed, without finding, that the Transaction was a loan. Nextep contends that the Transaction was a lease and not a loan, but its motion to dismiss does not turn on this issue.

[3] The allegations in Prayitno's previous complaint are summarized in Nextep's previous memorandum in support of its motion to dismiss and the Court's Order. *See* Dkt. 77 at 1-2; Dkt. 42 at 2-3.

### III.   STANDARD OF REVIEW

Challenges to subject matter jurisdiction under Rule 12(b)(1) may be either "factual" or "facial." *See, e.g., Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Paige v. Waukesha Health Sys.*, No. 12-C-0601, 2013 U.S. Dist. LEXIS 96962, at *2, 2013 WL 3560944 (E.D. Wis. July 11, 2013) (citing *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).  In reviewing a "factual" challenge, the Court may "look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists."  *Silha,* 807 F.3d at 173; *see also* Dkt. 42-1, *Pemental v. Bank of N.Y. Mellon*, No. 16-483S, 2017 U.S. Dist. LEXIS 122971, at *21 n.18 (D.R.I. May 10, 2017) ("The Court observes that a *Spokeo* dismissal is based on Fed. R. Civ. P. 12(b)(1), which does not limit the Court to consideration only of the content of the pleadings.").

In reviewing a "facial challenge," the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Silha*, 807 F.3d at 173.  But the Seventh Circuit has held that "when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly-Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)."  *Id.* at 174 (citations omitted).

Moreover, "'[w]here jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raise[d] the jurisdictional challenge[.]'"  *Vera v. Mondelez Glob. LLC*, No. 16 C 8192, 2017 U.S. Dist. LEXIS 38328, at *2, 2017 WL 1036509 (N.D. Ill. Mar. 17, 2017) (quoting *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008)).  Accordingly, "[t]he plaintiff must clearly allege facts demonstrating each element of standing to invoke federal jurisdiction."  *McCollough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 U.S. Dist.

LEXIS 100404, at *5, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Id.* "To survive dismissal, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and requires plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV.   ARGUMENT

### A.   Count I Should be Dismissed For Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing

The Court dismissed Prayitno's previous complaint based on lack of standing under *Spokeo*. *See* Dkt. 77 at 2-4; *see also* Dkt. 42 at 4-9 (case law and argument why Prayitno lacks standing); Dkt. 49 at 1-8 (same). Nextep will not repeat its previous arguments, but incorporates its previous motion to dismiss briefing with reference to any previously-pled allegations in Prayitno's TAC. Instead, Nextep will focus on Prayitno's new allegations found primarily in paragraphs 27-35, 38 of the TAC. *See* Ex. A, Comparison of TAC with previous complaint.

#### 1.   Prayitno could not have obtained a used transmission for cash.

Prayitno now alleges that had he "understood that he would have to pay over 140%, he may have "purchased the used transmission job, at the lesser price, and paid cash . . ." Dkt. 79, ¶ 28. The "used transmissions job" refers to the allegations of ¶ 13, which state that "[a]ccording to the owner and records of Atomic Transmissions, plaintiff was initially offered a used transmission at about $995 or $995 plus minor additional items. The total would have been

substantially less than $2,105." *Id.*, ¶ 13.  But this mischaracterizes the testimony of the owner

of Atomic Transmissions, who testified that installing a used transmission (if it were even

possible) would have cost the same as rebuilding Prayitno's transmission.  Ex. B, Atomic Dep. at

11:3-6; 31:18-32:6; 33:12-34:4; 35:5-36:9; 72:4-7.[4]  Specifically, he testified that:

> **Q: Okay. My second question is: Is it cheaper for the customer and less
> money for you to rebuild a transmission versus putting in a used or a new
> transmission?**
> A: In some instances, like [Prayitno's 2002] Acura [TL], just because that's what
> we're talking about, that transmission is very expensive used, and you could be
> spending close to the same money on a used transmission versus a rebuilt
> transmission.  In other words, Acura is not a good model to look up because the
> Acura transmission can cost, used, 900 to $1,200 with 100,000 miles on it, and
> then you have the labor to put in which could be another 5- or $600, and then oil
> and everything else.  So by the time you're done, you're at almost $2,000; and we
> normally quote anywhere on an Acura year of that vehicle anywhere from 19- to
> probably 2400.  You know, we give somebody a range.
> **Q: Okay.  So it's around the same price to rebuild a transmission versus
> putting in a used transmission?**
> A: In that instance, it's very close.
> **Q: With a 2002 –**
> A: With the Acura.  I mean, if you had a Ford Bronco, no, because that trans
> would go for $400.  Do you know what I mean?  And there's a million of them
> out there, but – You know, so it is different for every vehicle.  So I mean, if you
> wanted to – this vehicle, that's definitely the case.

*Id.* at 35:5-36:9.  So Prayitno's allegation that "[t]he total cost [for a used transmission] would

have been substantially less than $2105" is contradicted by the owner of Atomic Transmissions,

who testified that the cost would be about the same (and the quality would have been worse).

Moreover, Prayitno admitted in his interrogatory answers that he did not have $1,600.

Prayitno stated that he was "initially provided a lower estimate of $1600,"[5] but he informed

Atomic that "he needed the vehicle promptly but would may [*sic*] not be able to pay the amount

---

[4] There is also evidence that installing a used transmission in Prayitno's car was not even possible.  The
owner of Atomic Transmissions testified that the handwritten note "Must be rebuilt w/ Mounts," (in
Appendix A to Prayitno's TAC, which was Atomic Transmissions Exhibit 5) indicated to him that had to
be rebuilt. Ex. B, Atomic Dep. at 93:4-13; *see also id.* at 69:19-70:12; 91:3-20.

[5] The owner of Atomic Transmissions disputed the accuracy of this number. Ex. B, Atomic Dep. at
102:18-107:2

in full on the anticipated delivery date[.]" Ex. C, Atomic Dep. Ex. 7, Interrog. Resps. at Resp.

10. Atomic's owner testified that the used transmission would have cost, at a minimum, "almost

$2,000; and we normally quote anywhere on an Acura year of that vehicle anywhere from 19- to

probably 2400[.]" Ex. B, Atomic Dep. at 35:19-21. Therefore, Prayitno's claim that he could

have paid cash for a used transmission is not plausible and contradicted by the facts.

### 2. Prayitno's allegation that he would have sought a small loan is also not plausibly pled.

The second part of ¶ 28, which alleges that "had plaintiff understood that he would have

to pay over 140%," he may have "[s]ought out a small loan from a loan company," Dkt. 79, ¶ 28,

is facially deficient. Prayitno does not allege that he would have obtained the loan even if he

"sought" it, what the terms of the loan would be, whether security or a cosigner would be

required, or whether the loan would have provided a better "rate" than Nextep's lease.

*Schwartz v. HSBC Bank USA, N.A.*, No. 14 Civ. 9525 (KPF), 2017 U.S. Dist. LEXIS

3410, at *15, 2017 WL 95118 (S.D.N.Y. Jan. 9, 2017), is particularly instructive. In that case,

the allegations of injury were similar to those presented here, focusing on a lack of APR

disclosures impinging on consumers' awareness of the cost of credit. *Id.* at *15. The court

concluded that the allegations of injury, even if they would be recognized under *Spokeo*, "are

conclusory and not plausibly pled." *Id.* at *11. It granted defendants' motion to dismiss

plaintiff's TILA claim under Rule 12(b)(1). *Id.* at *20.

In denying plaintiff's motion for reconsideration, the *Schwartz* court elaborated that

"factual allegations going to the Court's subject matter jurisdiction should be not merely

threadbare and conclusory, but rather should be 'affirmatively and plausibly pled.'" *Schwartz v.*

*HSBC Bank USA, N.A.*, No. 14 Civ. 9525 (KPF), 2017 U.S. Dist. LEXIS 94019, at *7, 2017 WL

2634180 (S.D.N.Y. June 19, 2017) (citation omitted). "Only if such factual support exists, can

[the plaintiff] nudge its alleged injury from one that is conceivable to one that is plausible." *Id.* (citing *Iqbal*, 556 U.S. at 680). The *Schwartz* reconsideration opinion discussed another case, where plaintiff alleged, *inter alia*, that the defendant's data breach caused her injury in the form of time and money she spent monitoring her credit, but those allegations were found to be insufficiently pled. *Id.* at *9 (citing *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 91 (2d Cir. 2017)). Here, Prayitno's allegations are similarly threadbare and conclusory. He has provided no facts about what small loan he would have sought, the rate on that loan, what the loan origination fee would have been, whether he would have qualified for that loan or the rate, or any other supporting details. Most importantly, he does not allege that this small loan would have been more beneficial than Nextep's lease.

### 3. Prayitno's refusal to state which course he would have taken defeats plausibility.

Prayitno's very allegation that he would have "done one or more of the following" renders Paragraph 28 implausible, showing that Prayitno is grasping at straws after the fact to attempt to establish standing, rather than pleading the actual facts as they happened. The Seventh Circuit has held that in analyzing "a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly-Iqbal*'s 'plausibility' requirement," *Silha*, 807 F.3d at 174, and Prayitno's threadbare and conclusory allegation that he would have "done one or more of the following," falls far short of that level.

### 4. Prayitno's alleged unwillingness to accept more than "40-50% interest" does not show concrete harm.

Prayitno's allegation of unwillingness to pay more than "40-50% interest," Dkt. 79, ¶ 29, does not establish concrete harm for several reasons. First, "APR" is not the same as "interest." *See* 12 CFR §226.22 and Appendix J to Part 226 (describing how to calculate APR). TILA does not require the disclosure of "interest rates," except for loans secured by real property or a

dwelling. *See* 12 CFR §226.18(s). Thus, even if full TILA loan disclosures had been given, Prayitno would not have known the interest rate. Second, Prayitno does not state how he would have acted differently had he known the rate exceeded 40-50%. If he simply means that he would have paid cash for a used transmission or sought out a loan, as alleged in ¶ 28, his allegations in ¶ 29 cannot be an independent source of concrete harm. Third, the statement is not plausible. Prayitno read the lease in full prior to signing it, Ex. D, RFA Resps. at Resp. 1, and therefore knew that it did not state an APR (or an interest rate). He states no facts which led him to believe that the APR (or the interest rate) would have been less than "40-50%." If he was "unwilling to pay more than 40-50% interest," but did not know what the interest or APR was, he wouldn't have entered into the lease. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("our pleading rules do not tolerate factual inconsistencies in a complaint[.]"); *Tibor Mach. Prods. v. Freudenberg-Nok Gen. Pshp.*, 967 F. Supp. 1006, 1013 (N.D. Ill. Mar. 24, 1997) ("it is well settled that courts are not required to disregard facts set forth in the complaint that undermine the plaintiff's claim.") (collecting authority).

### 5. Prayitno's payoff inquiry does not establish concrete harm under *Spokeo*.

Prayitno also alleges that after he entered the lease, he contacted Nextep and "inquired about paying off the obligation," that Nextep "quoted a payoff amount that was larger than [he] anticipated," that he "was unable to determine . . . whether the quoted payoff amount was correct," that "[h]ad the transaction been documented as a loan," he "would have been able to determine from the loan document what it would cost to pay off the obligation, using APR," and that "[i]t is not possible for the consumer to compute the early payoff amount from the disclosures made in connections with a lease." Dkt. 79, ¶¶ 30-32. These allegations are insufficient to establish injury in fact for several reasons.

8

First, Prayitno does not allege that the payoff amount quoted to him by Nextep was incorrect, just that he could not independently verify it. This does not confer a concrete injury. *See Jamison v. Bank of Am., N.A.*, No. 2:16-cv-00422-KJM-AC, 2017 U.S. Dist. LEXIS 125512, at *10, 2017 WL 3394120 (E.D. Cal. Aug. 8, 2017) (finding allegation that plaintiff "received the 'run-around' from bank employees while attempting to discuss her loan status," deficient because "[m]ere inconvenience . . . is insufficient to confer standing.") Prayitno's allegation that he was not able to confirm Nextep's post-contractual statements similarly deficient.

Second, Prayitno does not allege what he would have done had he been able to verify the payoff amount, or the harm to him from being unable to do so. Third, contrary to Dkt. 79, ¶ 31, knowing the APR would not have aided Prayitno in determining "what it would cost to pay off the obligation." APR is "a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made." 12 C.F.R. § 226.22(a)(1). In contrast, "[a] payoff balance request . . . inquires into the total amount outstanding on the loan, or the amount needed to pay off the loan." *See Davidson v. PNC Bank, N.A.,* No. 1:16-cv-569-WTL-MPB, 2016 U.S. Dist. LEXIS 170523, at *6, 2016 WL 7179371 (S.D. Ind. Dec. 9, 2016). That, in turn, depends on the remaining balance of the loan, plus any other amounts owed to, or credits owed by, the lender. *Id*. at *6-8. Knowing the annual cost of the credit gives no information about the outstanding loan amount at a point in time or additional amounts owed or credits, so the allegation that "plaintiff would have been able to determine . . . what it would cost to pay off the obligation, using the APR," Dkt. 79, ¶ 31, is implausible.

### 6. None of Prayitno's additional allegations establish standing.

Finally, Prayitno makes some additional allegations that all fail to sufficiently establish standing under *Spokeo*. Prayitno alleges that he "did not know how to determine APR," and that

"[c]onsumers generally underestimate the true cost of credit as shown by the APR." Dkt. 79, ¶ 27. But as the Court found previously, "Plaintiff does not allege that he misunderstood the cost of the credit Nextep offered him in a way that caused him to borrow from defendant rather than another lender. (Plaintiff has alleged the Agreement specifically stated how much plaintiff would have to pay and in what intervals over the life of the loan.)" Dkt. 77 at 4. Simply alleging that Prayitno or other consumers did not know how to determine the APR does not cure the defect identified by the Court. *See also, e.g., Cottle v. Monitech, Inc.*, No. 7:17-CV-137-BO, 2017 U.S. Dist. LEXIS 209069, at *7, 2017 WL 6519024 (E.D.N.C. Dec. 19, 2017) ("plaintiff's allegation that she was confused as to certain lease terms is not the same as an allegation that she was oblivious as to the true cost of her lease transaction") (dismissing Consumer Leasing Act claim under *Spokeo*).

Prayitno also alleges that "as a result of defendant's evasion of TILA . . . plaintiff entered into and remained in an unduly burdensome and improvident transaction that he would not have undertaken," that he "made uninformed use of credit," that "the transaction documents provided . . . were materially misleading and failed to disclose key information Congress required defendant to provide to consumers," that "nondisclosure of APR [was] an integral part of a scheme to charge usurious interest," and that by not disclosing "APR, defendant evaded actions by regulators." Dkt. 79, ¶¶ 33-35, 38. But "[m]ere incantations of concrete harm and material risk of concrete harm, or of the purpose statement of TILA, are plainly insufficient to plead plausibly that Plaintiff suffered a concrete injury," *Schwartz*, 2017 U.S. Dist. LEXIS 3410, at *15-16, 2017 WL 95118 (internal quotation marks omitted).

Count I should therefore be dismissed under Rule 12(b)(1).[6]  Also, because Prayitno has now failed for a third time to properly plead standing under *Spokeo*, the Court should dismiss Count I without further leave to amend.  *See, e.g., Jamison*, 2017 U.S. Dist. LEXIS 125512, at *13, 2017 WL 3394120 ("Accordingly, the court DISMISSES plaintiff's TILA and Regulation Z claim for lack of standing.  At hearing, plaintiff conceded she suffered no other potential injuries as a result of defendants' alleged TILA violation.  Accordingly, the dismissal is without leave to amend."); *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("district courts have broad discretion to deny leave to amend where there is . . . repeated failure to cure deficiencies . . . or where the amendment would be futile[.]").

### B.  Because Count I Should Be Dismissed, the Court Should Decline Supplemental Jurisdiction Over Counts II and III

Because the Court should dismiss Count I, the only federal claim, it should also relinquish supplemental jurisdiction over the pendent state-law claims of Counts II and III, as it did previously, *see* Dkt. 77 at 4; *see also* 28 U.S.C. § 1367(c)(3); *Smith v. Ill. Sch. Dist. U-46*, 120 F. Supp. 3d 757, 777 (N.D. Ill. 2015) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (quoting *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998)).

---

[6] While Nextep believes that this issue is properly resolved under Rule 12(b)(1), it moves to dismiss in the alternative under Rule 12(b)(6) for failure to state a claim and to "provide the defendant with fair notice of the claim's basis."  *See Davidson*, 2016 U.S. Dist. LEXIS 170523, at *2 n.1, *9-10, 2016 WL 7179371 (dismissing TILA claim under Rule 12(b)(6) where plaintiff failed to plausibly allege violation).

### C.    Count II Should Alternatively Be Dismissed on the Merits[7]

The Court should also dismiss Count II pursuant to Rule 12(b)(6), because even if the Transaction was not a lease, it was not a loan of money either.  Instead, Nextep financed a sale: the rebuilding of Prayitno's transmission.  The Interest Act applies only to loans of money, and does not apply to the financing of the purchase of goods or services.  In *Dennis v. Old Republic Ins. Co.*, 218 Ill. App. 3d 637, 640, 578 N.E.2d 1010, 1011 (1991), a consumer bought home improvement goods and services, and a bank provided financing.  The consumer agreed to make a series of payments to the bank, but then claimed that the method of payment violated the Interest Act.  *Id.* at 641, 578 N.E.2d at 1012.  The court reversed the trial court's denial of the lender's motion to dismiss, and stated "[i]t is well settled that the Interest Act applies to those contracts which in substance involve a loan of money and is not applicable where there is a *bona fide* sale of goods or services."  *Id.* at 645-46, 578 N.E.2d at 1015-16.  In *Budnick Converting, Inc. v. Nebula Glass Int'l, Inc.*, No. 09-cv-646-DRH, 2012 U.S. Dist. LEXIS 77430, at *10, 2012 WL 2017972 (S.D. Ill. June 5, 2012), a purchaser of goods was charged 18% interest.  The court, citing *Computer Sales Corp. v. Rousonelos Farms, Inc.*, 190 Ill. App. 3d 388, 392, 546 N.E.2d 761, 763 (1989) stated "if the transaction involves a sale rather than a loan, it is not subject to the limitation on interest . . . The parties to the contract could agree that defendant would pay interest at a rate higher than the maximum rate provided in the usury statute."  *Id.* at *12 (internal quotes omitted).  Therefore, even if the Transaction was not a lease, it would be an installment sale, rather than a loan of money, and the Interest Act would not apply.

---

[7] The Court's order, Dkt. 77, did not substantively address Nextep's arguments regarding why Counts II and III should be dismissed on the merits. The TAC does not appear to add allegations relating to Counts II and III. Thus, Nextep makes the same argument in this Section and Section D below that it made in its previous memorandum in support of its motion to dismiss, *see* Dkt. 42.

For the same reason, the CILA does not apply to the Transaction. The prohibitions of Section 1 of the CILA (which apply to unlicensed entities) only apply to entities engaged in the business of "making loans of money . . ." 205 ILCS § 670/1. The Transaction was not a loan of money, and therefore the CILA is not applicable. Count II should be dismissed.

### D. Count III Should Alternatively Be Dismissed on the Merits

Count III should also be dismissed pursuant to Rule 12(b)(6). Prayitno alleges that Nextep engaged in both deceptive and unfair conduct under the ICFA, but fails to make adequate allegations under either prong.[8]

As this Court recently stated in *Clark v. Bumbo Int'l Tr.,* No. 15 C 2725, 2017 U.S. Dist. LEXIS 137607, at *15, 2017 WL 3704825 (N.D. Ill. Aug. 28, 2017):

> The elements of a claim under the ICFA are: (1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff suffered actual damage; and (5) the damage was proximately caused by the deception. *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (citing *Oliveira v. Amoco Oil Co*., 201 Ill. 2d 134, 776 N.E.2d 151, 160, 267 Ill. Dec. 14 (Ill. 2002)). . . . Although reliance on an alleged misrepresentation is not an element of statutory consumer fraud, a plaintiff suing under the statute must show that the alleged fraud proximately caused her injury.

Prayitno has not pled element five (proximate causation).

### 1. Prayitno fails to allege the proximate causation element of the ICFA.

To establish proximate causation under the ICFA, a plaintiff must show that he was, in some manner, deceived by the alleged misrepresentation. *Clark, supra*, 2017 U.S. Dist. LEXIS 137607, at *15, 2017 WL 3704825 (citing authority). Prayitno's only allegation of causation is

---

[8] Allegations of fraud under the ICFA must comply with Rule 9(b)'s requirement that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." *See Ibarrola v. Kind, L.L.C.*, No. 13 C 50377, 2014 U.S. Dist. LEXIS 95833, at *8, 2014 WL 3509790 (N.D. Ill. July 14, 2014). However, there is some authority that the heightened pleading standard does not apply to claims of "unfair," as opposed to "deceptive" conduct. *See Rodriguez v. Chase Home Fin., L.L.C.*, No. 10 C 05876, 2011 U.S. Dist. LEXIS 123166, at *6, *9-10, 2011 WL 5076346 (N.D. Ill. Oct. 25, 2011).

that he would have paid less, because Nextep would have been forced to reduce its alleged 140% rate to "the competitive level" of 99%. *See* Dkt. 79, ¶¶ 51-53. However, the Illinois Supreme Court rejected a very similar claim in *Oliveira v. Amoco Oil Co*., 201 Ill. 2d 134, 151, 776 N.E.2d 151, 163 (2002). There, plaintiff claimed that an oil company had made misleading claims about its gasoline in advertisements, and that he paid an excessive amount because the advertisements created an "artificially inflated" price for gasoline he purchased. *Id.* at 140, 776 N.E.2d at 155. The court upheld the grant of the oil company's motion to dismiss because plaintiff had not alleged that he was deceived by the advertisements. *Id.* at 151, 776 N.E.2d at 163. *See also Shannon v. Boise Cascade Corp.,* 208 Ill. 2d 517, 525, 805 N.E.2d 213, 217 (2004) (similarly upholding dismissal where plaintiff claimed that misleading advertising "created a market for [defendant's] product that would not otherwise exist"); *Oshana v. Coca Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (citing *Oliveira* for proposition that proximate causation has not been alleged where plaintiff does not allege that he was deceived). Here, Prayitno has not alleged that he was deceived, but that he paid a "supracompetitive" rate. Dkt. 79, ¶ 53. That exact allegation of deception was found inadequate in *Oliveira*, and therefore the ICFA claim should be dismissed.

### 2.  Prayitno's allegations of unfair conduct are deficient for the additional reason that they fail to allege the *Sperry* factors.

Recovery may be had for unfair as well as deceptive conduct. *See Robinson v. Toyota Motor Credit Corp*., 201 Ill. 2d 403, 417, 775 N.E.2d 951, 960 (2002); *see also Batson v. Live Nation Entm't, Inc*., 746 F.3d 827, 830 (7th Cir. 2014) ("A plaintiff may allege that conduct is unfair under [the ICFA] without alleging that the conduct is deceptive.") (citations omitted).

In determining whether conduct is unfair, the ICFA dictates that "consideration shall be given to the interpretations of the Federal Trade Commission [FTC] and the federal courts

14

relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2; *see also Robinson,* 201 Ill. 2d at 417, 775 N.E.2d at 960; *Batson,* 746 F.3d at 830. The most important of those interpretations are the "*Sperry* factors," which the FTC has published and the Supreme Court has cited with approval. *Robinson,* 201 Ill. 2d at 417, 775 N.E.2d at 960; *Batson,* 746 F.3d at 830; *see also FTC v. Sperry & Hutchinson Co*., 405 U.S. 233, 92 S. Ct. 898 (1972). This Circuit has adopted the *Sperry* test. *See Batson,* 746 F.3d at 830.

The *Sperry* factors ask whether the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *Sperry,* 405 U.S. at 244 n.5; *see also Robinson,* 201 Ill. 2d at 417-418, 775 N.E.2d at 961. *Robinson* held that "[a]ll three of the criteria in *Sperry* do not need to be satisfied to support a finding of unfairness." *Id.* at 418, 775 N.E.2d at 961; *see also Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 751-52 (N.D. Ill. 2011) (citing additional Illinois state cases). Instead, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill. 2d at 418, 775 N.E.2d at 961 (citation omitted). Here, Prayitno has not alleged any of the criteria.

    a.  <u>Public Policy</u>

Plaintiff does not identify a public policy, other than to claim a violation of other statutes (the Interest Act and the Illinois criminal usury statute, 720 ILCS 5/17-59). Dkt. 79, ¶ 79(a). These cannot establish the type of public policy violation required. First, Nextep did not violate either statute. As discussed above, there was no violation of the Interest Act. Nor was there a violation of the criminal usury statute, because the criminal usury statute also does not apply to sale transactions. *See Gecht v. Suson*, 3 Ill. App. 3d 183, 188, 278 N.E.2d 193, 196-97 (1971).

Second, Illinois courts hold that the ICFA is not an additional enforcement mechanism for other statutes. *See Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374, 389-90, 550 N.E.2d 986, 993 (1990). The ICFA does have two sections which make the violation of other laws a violation of the ICFA—Sections 2E and 2Z[9]—but neither of those sections list either the Interest Act or the criminal usury statute (or the TILA for that matter). Prayitno is effectively asking this Court to add statutes to those two sections which the Illinois legislature chose to omit.

  b. <u>Immoral, Unethical, Oppressive, or Unscrupulous Conduct</u>

*Batson* stated that "[t]he relevant inquiry here is whether a defendant's conduct is 'so oppressive as to leave the consumer with little alternative except to submit to it . . .'" 746 F.3d at 833 (citing *Robinson*, 775 N.E.2d at 961). *Batson* held that "this element is not satisfied if a consumer can avoid the defendant's practice by seeking an alternative elsewhere. *See, e.g., Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010) (citing *Robinson* for the proposition that unfairness cannot be proved if plaintiff could have avoided the injury by going elsewhere to lease a car). Prayitno has not alleged that he lacked any alternatives to Nextep's lease.

  c. <u>Substantial Injury to Consumers</u>

The third *Sperry* factor is met only if the injury is (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided. *Siegel*, 612 F.3d at 935.

The harm Prayitno complains of could have easily been avoided. In *Batson*, plaintiff complained that she was charged a parking fee as part of the price of a concert ticket. 746 F.3d at 829. The court upheld dismissal of the complaint, in part because the plaintiff could have

---

[9] Section 2F of the ICFA provides that "Any person who is held in any civil or criminal proceeding to have willfully and materially violated any Illinois statutory provision regulating the extension of credit to borrowers or designed to protect the consumer purchasing merchandise in a credit, as contrasted from a cash, transaction" violates the ICFA. However, there has been no such finding.

avoided the harm complained of by choosing an alternative entertainment. *Id.* at 834-35. Similarly, Prayitno fails to allege he had no alternative to engaging in the Transaction. Because Prayitno has failed to plead the necessary requirements for either deceptive or unfair conduct under the ICFA, Count III of the TAC should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Nextep requests that the Court grant its motion to dismiss the TAC without further leave to amend.

Dated: August 14, 2018          Respectfully submitted,

By:  /s/ *Bruce Menkes*
    One of its attorneys

Bruce N. Menkes (ARDC #6187337)
Steven L. Baron (ARDC #6200868)
George V. Desh (ARDC #6305733)
MANDELL MENKES LLC
1 North Franklin Street, Suite 3600
Chicago, IL 60606
(312) 251-1000
bmenkes@mandellmenkes.com
sbaron@mandellmenkes.com
gdesh@mandellmenkes.com
*Counsel for Defendant Nextep Funding LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on August 14, 2018 via the Court's ECF system on all counsel of record who have consented to electronic service.

 /s/ *Bruce Menkes*        
